UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHY LaFONDA KELLEY,

    Plaintiff,

v.    Case No. 1:18-CV-401

    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of June 1, 2013. PageID.307. Plaintiff identified her disabling conditions as depression, anxiety, chronic edema, sleep apnea, high blood pressure (HBP), chronic arthritis, and congested [sic] heart failure. PageID.312. Prior to applying for DIB and SSI, plaintiff completed the 12th grade and worked as a customer service representative and sales clerk. PageID.92, 314. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 26, 2017. PageID.79-94. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2013, and that she meets the insured status of the Social Security Act through December 31, 2019. PageID.81. At the second step, the ALJ found that plaintiff had severe impairments of: chronic bilateral lower extremity edema; hypertension with chronic diastolic heart failure; obstructive sleep apnea; obesity, status post gastric sleeve bypass[1]; degenerative disc disease of the cervical spine; osteoarthritis of bilateral knees with plantar fasciitis; asthma; history of interstitial cystitis with overactive bladder; major depressive disorder; and generalized anxiety disorder. PageID.82. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.82.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: occasional climbing stairs, crouching, crawling, kneeling, stooping/bending; avoid workplace hazards such as dangerous, moving machinery and unprotected heights, such that the claimant is not able to climb ladders, ropes, or scaffolds; avoid continuous exposure to pulmonary irritants; capable of low stress work, which is work that is self-paced and not at a production rate and which is not in team/tandem with coworkers; occasional contact with supervisors, coworkers, and the general public; and capable of simple, routine, repetitive work that does not involve complex decision-making.

PageID.85. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.92.

---

[1] The ALJ's decision contains a scrivener's error, referring to "obesity, status post gastric *sleep* bypass." PageID.82 (emphasis added).

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.92-93. Specifically, the ALJ found that plaintiff could perform the requirements of light, unskilled work in the national economy such as administrative support worker (170,000 jobs) and sorter (74,000 jobs). PageID.92-93. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from June 1, 2013 (the alleged onset date) through July 26, 2017 (the date of the decision). PageID.93.

### III. DISCUSSION

Plaintiff set forth five issues on appeal:

**A. The ALJ erroneously failed to give consideration and proper weight to plaintiff's treatment records and her testimony.**

Plaintiff sets out a number of claims against the ALJ, *e.g.*, the ALJ ignored or dismissed portions of the treatment record, the ALJ improperly diminished plaintiff's credibility, and the ALJ minimized plaintiff's medical conditions (including her psychiatric condition, her chronic edema, arthritis in her knees, her chronic interstitial cystitis, and her chronic heart condition ). Plaintiff's Brief (ECF No. 12, PageID.3000-3003). However, plaintiff does not develop any argument in detail. Rather, after setting forth a lengthy recitation of plaintiff's medical history (PageID.2987-2996), plaintiff presents multiple claims critiquing the ALJ's handling of the medical evidence and her credibility. In essence, plaintiff is asking this Court to perform a *de novo* review of the case. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard*, 889 F.2d at 681. Accordingly, plaintiff's claim of error is denied.

### B. The ALJ erroneously failed to make findings concerning the effect of plaintiff's obesity on her severe impairments.

Plaintiff contends that the ALJ failed to determine the impact of her obesity on her other impairments, including edema, arthritic knees, and chronic heart failure. PageID.3003. Although the agency deleted obesity from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1, the Commissioner views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability. In this regard, SSR 02-1p ("Evaluation of Obesity") provides in pertinent part:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-01p, 2002 WL 34686281 (Sept. 12, 2002). While SSR 02-1p provides guidance for the ALJ's in evaluating a claimant's obesity, it "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir. 2009).

Here, the ALJ found that plaintiff had a severe impairment of obesity. PageID.82. Contrary to plaintiff's contention, the ALJ addressed the impact of obesity on her other impairments. As an initial matter, the ALJ stated that "[a]s required by SSR 96-8p, the residual

6

functional capacity has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of *all* the claimant's medically determinable impairments." PageID.85 (emphasis added).

In addition, the ALJ addressed the impact of plaintiff's obesity throughout her evaluation of the medical evidence as demonstrated by the following excerpts from the decision: on October 6, 2014, plaintiff's treating physician, Dr. Kakarala, "noted that the claimant's pulmonary function studies were reduced due to obesity and not pulmonary dysfunction" (PageID.83); "on June 20, 2016, the treating cardiologist noted that the claimant's edema in the lower extremities was secondary to obesity and not venous insufficiency" (PageID.83); the ALJ explained that "[t]he claimant's obesity, hypothyroidism, hyperandrogenism, and history of interstitial cystitis are not evaluated under any specific section in the Listing of Impairments, but are considered when assessing the claimant's residual functional capacity" (PageID.83); "the claimant's lower extremity edema appears to be secondary to the claimant's obesity and not due to cardiac issues" (PageID.87); "Dr. Formolo [plaintiff's cardiologist] noted that the claimant's lower extremity edema was secondary to obesity and that the claimant's chest pain was not cardiac or anginal" (PageID.87); "[o]n April 25, 2016, the claimant underwent gastric sleeve surgery due to her obesity" (PageID.88); on May 16, 2016, the treating cardiologist encouraged plaintiff to exercise and diet (PageID.88); on June 20, 2016, the treating cardiologist noted that plaintiff's lower extremity edema was secondary to obesity and not venous insufficiency (PageID.88); the ALJ found that "the claimant's cardiac workup has been relatively unremarkable and the claimant's lower extremity edema is secondary to her obesity" (PageID.88); and, the ALJ found that, "[T]hroughout the medical evidence, none of the evaluating physicians have indicated that the claimant has difficulty walking or standing. Moreover, in June 2016, the treating cardiologist

noted that the claimant did not have leg pain while walking and encouraged the claimant to diet and exercise." (PageID.89).

Finally, the ALJ observed that "[i]n March 2015, Dr. Abbasi, a state disability physician, concluded that plaintiff could perform light work with limitations of standing/walking for 2 of 8 hours, occasional postural except no climbing ropes/ladders/scaffolds due to obesity," that this assessment was given significant weight because it was consistent with the record through at least March 2015. PageID.91. However, the ALJ also found that "the medical evidence since the assessment by Dr. Abbasi indicates that the claimant's lower extremity edema is secondary to obesity and not cardiac issues," that in 2016 the treating cardiologist noted that plaintiff had no leg pain and encouraged plaintiff to exercise and diet, and that "[t]herefore, the assessment by Dr. Abbasi [in 2015] of standing and walking for only 2 of 8 hours is not fully corroborated by the more recent medical evidence." PageID.91. Contrary to plaintiff's contention, the ALJ considered the impact plaintiff's obesity on her other impairments. Accordingly, this claim of error is denied.

### C. The residual functional capacity assessment (RFC) provided by the ALJ concerning plaintiff's ability to stand and walk is not supported by substantial evidence.

Plaintiff contends that in rendering her RFC evaluation, "the ALJ provided no limitation for standing or walking." PageID.3003. Plaintiff also states that in March 2015 "a state disability physician" concluded that plaintiff could perform light work with the limitation of standing and walking for no more than two hours in an eight-hour workday. PageID.3004. Plaintiff cites no legal authority in support of her claim and does not otherwise develop this argument. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which

the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

As discussed, the ALJ found that Dr. Abbasi's standing and walking limitations were not fully corroborated by the more recent medical evidence, and the ALJ's RFC determination did not limit plaintiff's standing or walking. However, the ALJ's RFC determination did limit plaintiff's use of her legs and knees by restricting her to "occasional climbing stairs, crouching, crawling, kneeling, stooping/bending; avoid workplace hazards such as dangerous, moving machinery and unprotected heights, such that the claimant is not able to climb ladders, ropes, or scaffolds." PageID.85. At Step 5, the ALJ found that plaintiff could not perform her past relevant work, PageID.92, but that she could perform occupations such as administrative support worker (170,000 jobs) and sorter (74,000 jobs), PageID.93. While the ALJ did not find that plaintiff required a sit/stand option at work, she explicitly stated that "[t]he vocational expert [VE] confirmed that these [244,000 jobs] can be performed either seated or standing." PageID.93. *See* PageID.146-147 (VE testified that "the administrative support positions allow for an individual to sit or stand as needed" and that "[s]orters that are basically seated number approximately 74,000 nationally"). In short, the ALJ's RFC restricted plaintiff's use of her knees and legs, and the identified jobs met not only the requirements of plaintiff's RFC, but also provided a sit/stand option. Accordingly, plaintiff's claim of error will be denied.

> **D.     The ALJ erroneously failed to consider the vocational expert's (VE's) testimony regarding plaintiff's limitations.**

According to plaintiff, her interstitial cystitis causes her to urinate frequently and be off task during the day (PageID.114), and her chronic edema requires plaintiff to elevate her legs frequently during the day (PageID.117). Plaintiff contends that the ALJ erred because he failed to consider the VE's testimony (1) that if a hypothetical individual needed a 15 minute break

9

every hour, the need for such a break would be work preclusive, and, (2) that if the individual had to elevate her legs to waist level during the day, such a requirement would be work preclusive. PageID.147-148. Plaintiff fails to cite legal authority or present any argument on this claim of error. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

### E. The ALJ failed to consider and give proper weight to the State of Michigan Disability Determination

Plaintiff contends that the ALJ erred by failing to consider that she was found disabled by the State of Michigan in April 2015 and receives Michigan State Disability Assistance. Plaintiff's claim is without merit. "[T]he ALJ is not bound by a determination of disability made by the state of Michigan." *Turcus v. Social Security Administration*, 110 Fed. Appx. 630, 632 (6th Cir. 2004). "[W]hile it is preferable for an ALJ to explain the consideration he or she gave to a state agency determination, it is not required." *Wright-Wenger v. Commissioner of Social Security*, No. 1:15-cv-753, 2016 WL 3922158 at *7 (W.D. Mich. July 21, 2016). Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 30, 2019  /s/ Ray Kent
United States Magistrate Judge